**GEORGIA HOSPITAL ASSOCIATION, et al., Plaintiffs,**

v.

**DEPARTMENT OF MEDICAL ASSIST-ANCE, et al., Defendants.**

Civ. A. No. C81–88A.

United States District Court, N. D. Georgia, Atlanta Division.

Jan. 7, 1982.

Jack S. Schroder, Jr., Scott R. Owens, Jones, Bird & Howell, Atlanta, Ga., for plaintiffs including intervenor.

Stephanie B. Manis, Asst. Atty. Gen., Atlanta, Ga., for state defendants.

Nina L. Hunt, Asst. U. S. Atty., F. Richard Waitsman, Asst. Regional Atty., U. S. Dept. of H. H. S., Atlanta, Ga., Barbara L. Gordon and Lewis K. Wise, U. S. Dept. of Justice, Washington, D. C., for federal defendant.

## ORDER

SHOOB, District Judge.

This action challenges Georgia's demonstration project for hospital reimbursement under the Medicaid program.[1] This program is a three-year demonstration project, which went into effect on January 1, 1981, after receiving approval by the U. S. Department of Health and Human Services (HHS). Plaintiffs are the Georgia Hospital Association (GHS), a trade organization representing approximately 205 of Georgia's 222 licensed hospitals, two Georgia hospitals, Georgia Medical Center, Inc., and Redmond Park Hospital, Inc., The Hospital Authority of Cherokee County, John Marston, President of the Georgia Hospital Association, and plaintiff-intervenor, Charles L. Foster, Jr., Administrator of West Georgia Medical Center, Inc. Defendants are the Georgia Department of Medical Assistance, which administers Georgia's Medicaid program, Charles K. Pierce, Commissioner of the Department of Medical Assistance (the Department), Georgia's Board of Medical Assistance, the members of the said Board, and Richard S. Schweiker, Secretary of HHS (the Secretary). The Court has also allowed the filing of an *amicus curiae* brief by the Federation of American Hospitals.

The parties have filed cross-motions for summary judgment and numerous briefs. After the filing of briefs in response to those of *amicus curiae*, and of plaintiff-intervenor, the case is before the Court for decision.

### I. *Factual Background*

On October 1, 1980, the Department applied to the Health Care Financing Administration (HCFA) of HHS for a grant for a demonstration project entitled "An Alternative Reimbursement System for Georgia Hospitals." State's Exhibit A. Georgia's application proposed the implementation of an alternative reimbursement system for Georgia's Medicaid Program beginning on January 1, 1981. State's Exhibit C. The system would be expanded at a later date to include the Medicare Program. *Id.* However, to this date Georgia has not applied for expansion of the project to the Medicare Program.

The demonstration project was reviewed by specialists in the field of hospital reimbursement methods prior to HHS' approval. Secretary's Exhibit D, ¶ 3. In particular, Georgia's proposal was reviewed by HHS' Hospital Cost Review Panel in July, 1979 as a continuation request and in November, 1980 as a new grant proposal. *Id.* The said panel was composed of representatives from HCFA, other HHS components and experts from nongovernmental institutions. *Id.*

In 1979, the Hospital Cost Review Panel ranked Georgia's proposal very high and recommended that it be approved for continued funding. *Id.,* ¶ 6. In 1980, the panel ranked Georgia's proposal very close to the proposal with the highest scores though it was not recommended for an award. *Id.* The panel found the proposal not specific regarding the project's operation for the second and third year of the three year period. *Id.*

---

**1.** Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.,* provides for the establishment of cooperative Federal-State programs, commonly called "Medicaid," to provide payments for "necessary medical services" rendered to qualified "needy individuals whose income and resources are insufficient to meet the costs of these services." 42 U.S.C. § 1396. States at their choice may institute Medicaid programs, in which case the Federal Government will reimburse them for a portion of the program's costs. 42 U.S.C. § 1396b; 42 C.F.R. § 447, *et seq.* To receive Federal funds, a State must submit a "state plan" in accordance with the Act and implementing Federal regulations. The various Medicaid programs, once approved, are administered by the respective States.

On the basis of the above panel's findings and HCFA staff analysis, on November 20, 1980, HCFA requested the Department to provide further information on the project's reimbursement methodology. State's Exhibit G at p. 1. The Department responded on December 1, 1980. *Id.* On December 5, 1980, HCFA's Regional Administrator recommended approval. Secretary's Exhibit G.

Finally, on December 31, 1980, HCFA approved Georgia's grant request and awarded Georgia $368,550 for 1981. Secretary's Exhibit H. This award consisted of $122,850 pursuant to 42 U.S.C. § 1315(a)(2) and $245,700 pursuant to 42 U.S.C. § 1395b–1(a)(1)(C). *Id.* The Department pledged $122,850.00 in state funds for a total of $491,400. *Id.* HCFA also granted Georgia a waiver of the reasonable costs requirements of the Medicaid program, 42 U.S.C. § 1396a(a)(13)(D); 42 C.F.R. § 447.-261, pursuant to 42 U.S.C. § 1315(a)(1). *Id.* On January 16, 1981, plaintiffs filed this action seeking to enjoin the demonstration project.

Before reaching the merits of the case it is necessary to dispose of three procedural arguments raised by the federal defendant. These are (1) whether the Court has standing to decide this action, (2) whether the case is ripe for decision, and (3) whether plaintiffs have exhausted their administrative remedies. The Court concludes, as discussed below, that none of these issues precludes review of the merits.

## II. *Standing*

■ Standing is established when plaintiff has alleged an actual or threatened "injury in fact, economic or otherwise," that is likely to be redressed by a favorable decision. *Simons v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 37–39, 96 S.Ct. 1917, 1923–1925, 48 L.Ed.2d 450 (1976); *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). This injury must be "real and immediate," not conjectural or hypothetical. *Rizzo v. Goode,* 423 U.S. 362, 372, 96 S.Ct.

598, 604, 46 L.Ed.2d 561; *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 674, 38 L.Ed.2d 674 (1974); *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969).

■ Here, the Court finds that plaintiffs have adequately shown their standing to bring this action. First, hospital plaintiffs have alleged that the demonstration project will result in lower reimbursement to them than under the pre-existing regulations. The Court finds it unnecessary for hospital plaintiffs to itemize their financial injury as a condition to establish standing. As already noted, *threatened* economic injury is sufficient to create standing. *Simons, supra,* 426 U.S. at 37–39, 96 S.Ct. at 1923–1925; *Alabama Nursing Home Association v. Califano,* 433 F.Supp. 1325, 1328–29 (M.D. Ala.1977). Additionally, as held by then Chief Judge Frank M. Johnson, Jr., in *Alabama Nursing Home Association, supra,* at 1328:

> Where a state plan is not in conformity with the Social Security Act, [as plaintiffs contend here] those individuals most directly affected by the administration of the program [nursing homes in that case] may seek judicial enforcement of the statute's requirements.

(Citation omitted.) The Court finds Judge Johnson's reasoning compelling. *See also American Hospital Association v. Harris,* CCH Medicare and Medicaid Guide, ¶ 30, 669 (D.D.C. Sept. 16, 1980).

■ Second, GHS, as a trade organization, has standing to bring suit on behalf of its members when: 1) its members have standing to sue on their own behalf; 2) the interests the organization seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *Hunt v. Washington State Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Here, given this Court's finding that GHS' members have standing, it is necessary only to determine whether GHS

meets the second and third requirements of the *Hunt* case. The Court finds that GHS is clearly seeking to protect interests which are germane to its purpose and that participation of individual members is unnecessary. Therefore, GHS has standing to raise its claims on behalf of its members.

■ Third, the Court also finds that individual plaintiff Marston has standing to prosecute this action. Fourth, by failing to oppose Mr. Foster's motion to intervene, defendants have waived any objections as to his standing. Nevertheless, it is clear that he, as a member of the Department's Medical Care Advisory Board, has standing to challenge the project. In sum, each plaintiff has standing to protect those rights unique to such plaintiff.

### III. *Ripeness*

■ Unlike standing, which focuses on who is the right plaintiff, the ripeness doctrine looks at whether the controversy is sufficiently developed for the courts to be able to decide the rights of the parties. In *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) the Supreme Court enunciated the following two-part analysis to determine whether a case is ripe for review: 1) whether the issues under consideration are fit for judicial decision; and 2) consideration of the hardship to the parties in withholding Court review.

■ The Court finds that this case is ripe for adjudication. First, the issues are fit for judicial review. The allegedly unconstitutional and illegal action concluded on January 1, 1981, when the program became effective. Additionally, plaintiffs are presently operating under the challenged program. Second, the hardships to plaintiffs in withholding review would be severe. If this action is not ripe until the demonstration project is completed as defendants contend, the Court might not be able to provide effective relief to plaintiffs. At that time prospective relief, if any is available, will not dissipate plaintiffs' monetary damages which are barred by the Eleventh Amendment. *See Florida Department of Health and Rehabilitation v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

### IV. *Exhaustion of Administrative Remedies*

■ "Where a claim is cognizable in the first instance by an administrative agency alone[,] judicial interference is withheld until the administrative process has run its course." *United States v. Western Pacific R. R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956); *see also McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). However, exhaustion is not required where plaintiffs attack the constitutionality of the statute or regulation under which the administrative agency acts, and the case does not turn upon a factual determination requiring administrative expertise. *Public Utilities Commission of California v. United States*, 355 U.S. 534, 539–40, 78 S.Ct. 446, 450–51, 2 L.Ed.2d 470 (1958); *Morris v. Richardson*, 346 F.Supp. 494, 495 (N.D.Ga.1972).

■ Here, plaintiffs' constitutional due process claims challenge the formulation and institution of the demonstration project. The State agency which defendants contend should hear this matter has no jurisdiction over such due process claims or federal statutory claims. Therefore, an attempt to exhaust administrative remedies would be futile. Accordingly, the Court finds that plaintiffs need not exhaust administrative remedies. Further, "the doctrine of 'primary jurisdiction' is not applicable here. That doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia National Bank*, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963).

## V. *The Merits*

As a preliminary matter, plaintiffs contend that two affidavits offered by the Secretary in support of his motion to dismiss and/or for summary judgment are deficient as a matter of law. These are the affidavits of James M. Kaple, Secretary's Exhibit B, and of David Poythress, Secretary's Exhibit P. After a review of the record and the law the Court finds these affidavits are not in compliance with Rule 56(e), Fed.R.Civ.P.[2] Mr. Kaple's affidavit states, inter alia, that "the information contained herein is *either* known to me personally *or has been provided to me by members of my staff.*" (Emphasis added.) Mr. Poythress' affidavit similarly fails to indicate that the information provided is based entirely on his personal knowledge. Accordingly, the Court will consider only those portions of these affidavits which are clearly based on the affiant's personal knowledge as required by Rule 56(e).

## A. *Review of the Demonstration Project by the Medical Care Advisory Committee.*

Plaintiffs contend that the Department implemented the demonstration project without the advice and participation of the Medical Care Advisory Committee as required by 42 U.S.C. § 1396a(a)(4) and 42 C.F.R. § 431.12. Pursuant to 42 U.S.C. § 1396a(a)(4) the Secretary promulgated 42 C.F.R. § 431.12 which provides in part:

(b) *State plan requirement.* A state plan must provide for a medical care advisory committee meeting the requirements of this section to advise the medicaid agency director about health and medical care services.

. . . . .

(e) *Committee participation.* The committee must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

The Court finds that the Department's implementation of the demonstration project was in compliance with 42 U.S.C. § 1396a(a)(4) and 42 C.F.R. § 431.12. First, the Hospital Subcommittee of the Department's Medical Care Advisory Committee discussed an early version of the demonstration project. Plaintiffs' Exhibit B. ¶ 10. Second, when the Department decided to expand the project to a state-wide basis, the Department requested various groups, including GHA, to participate on an expanded Hospital Subcommittee. State's Exhibit B at ¶ 4. This new expanded Hospital Subcommittee met on several occasions to discuss the demonstration project prior to its submission to HHS. *Id.* at ¶ 6. The Court finds that the Medical Care Advisory Committee, through the expanded Hospital Subcommittee, had ample opportunity to advise the Department regarding the project.

 Further, the said regulation neither requires the Committee's review of every project undertaken by the Department nor compels the participation of the entire committee in the review of each project submitted to the committee. Thus, plaintiff-intervenor's claim, that his right as member of the committee was abrogated, by the Department's failure to submit the project for the review of the entire committee, is without merit. Similarly, plaintiffs' claims that the special Hospital Subcommittee's failure to include Medicaid recipients and others violates the statute is without merit. The Court also finds that plaintiffs lack standing to raise any claims which might accrue to Medicaid recipients or to consumer organizations.

## B. *The Secretary's Grant of a Waiver of the Reasonable Cost Limitations.*

 Plaintiffs argue that the Secretary's waiver of the reasonable cost reimbursement requirements of 42 U.S.C. § 1396a(a)(13)(D) granted to the Department cannot be authorized by either 42 U.S.C. § 1315 or 42 U.S.C. § 1395b–1(b).

---

**2.** Rule 56(e) provides, inter alia, that

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . .

The Court finds that the Secretary was authorized to waive the reasonable cost reimbursement requirements pursuant to either 42 U.S.C. § 1315, or 42 U.S.C. § 1395b–1(b). Section 1315 of Title 42 grants the Secretary broad authority to waive provisions of the Medicaid statute for demonstration projects when he finds the project "is likely to assist in promoting the objectives of" the program.[3]

> The limitation, and the only limitation imposed on the Secretary [by section 1315] was that he must judge the project to be "likely to assist in promoting the objectives" of the designated parts of the Social Security Act...
>
> This brings us to the question whether the Secretary had a rational basis for determining that the [project is] "likely to assist in promoting the objectives" of the Medicaid Program.

(Citation omitted.) *Aguayo v. Richardson*, 473 F.2d 1090, 1105 (2d Cir.), *cert. denied* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1973).

Plaintiffs contend that there is an issue of fact as to whether the reduced reimbursement under the demonstration project will in fact "assist in promoting the objectives" of the Medicaid program. This argument is without merit. Section 1315 does not require the Court to find whether this project in fact will promote the objectives of the program, but rather, whether the Secretary, as stated in *Aguayo*, had a rational basis for his determination.

As pointed out by the Secretary, the fact that one of the goals of the Medicaid program is to provide high quality medical care while controlling cost is beyond dispute. *See* 42 U.S.C. § 300k(a)(3) and (4). Georgia's application for the demonstration project explicitly sets forth at page 1 the goal of cost control. Accordingly, the Court finds that the Secretary had a rational basis for making his determination pursuant to 42 U.S.C. § 1315.

The Secretary was also authorized by 42 U.S.C. § 1395b–1(b) to grant the said waiver.[4] Subsection (b), pursuant to which the Secretary awarded $245,700 to the Department for 1981, provides the Secretary with the authority to grant waivers of the reasonable cost requirements. The Court finds that there are no disputed issues as to any material facts regarding the Secretary's authority to grant the said waivers pursuant to this provision.

Plaintiffs also contend that the Georgia demonstration project constitutes a prospective reimbursement experiment under § 222(a) of the Social Security Amendments of 1972[5] and, accordingly, that that section is the Secretary's exclusive authority to approve this project. In plaintiffs' view, since the Secretary failed to rely upon

---

**3.** 42 U.S.C. § 1315 reads as follows:

> (a) In the case of any experimental, pilot, or demonstration project which, *in the judgment of the Secretary,* is likely to assist in promoting the objectives of subchapter I, VI, X, XIV, XVI, XIX, or XX of this chapter, or Part A of subchapter IV of this chapter, in a State or States—
>
> (1) the Secretary may waive compliance with any of the requirements of section 302, 602, 802, 1202, 1352, 1382, 1396a, 1397a, 1397b, or 1397c of this title, as the case may be, to the extent and for the period he finds necessary to enable such State or States to carry out such project, and...

(Emphasis added.) Subchapter XIX is the reference to Title XIX of the Social Security Act, commonly called the "Medicaid program," which is codified in 42 U.S.C. § 1396, *et seq.* The reasonable cost reimbursement provision is codified at 42 U.S.C. § 1396a(a)(13)(D).

**4.** 42 U.S.C. § 1395b–1(b) reads as follows:

> In the case of any experiment or demonstration project under subsection (a) of this section, the Secretary may waive compliance with the requirements of this subchapter [Title XVIII] and subchapters V and XIX of this chapter insofar as such requirements relate to reimbursement of payment on the basis of reasonable cost...

Subsection (a) provides as follows:

> (C) to determine whether the rates of payment or reimbursement for health care services, approved by a State for purposes of the administration of one or more of its laws, when utilized to determine the amount to be paid for services furnished in such state under the health programs established by this chapter, would have the effect of reducing the costs of such programs without adversely affecting the quality of such services...

**5.** Section 222(a) of Pub.L. 92 603 was codified as a note after U.S.C. § 1395b 1.

§ 222(a), the grant and waiver are unauthorized. The Court finds that the demonstration project is not a prospective reimbursement experiment and as such is not covered by § 222(a). Moreover, even if § 222(a) was applicable, that provision does not limit the Secretary's authority under either 42 U.S.C. § 1315 or 42 U.S.C. § 1395b–1(a)(1)(C). Therefore, plaintiffs' arguments that the Secretary's waiver was unauthorized are without merit.

C. *Advice and Recommendation of Specialists.*

■ Plaintiffs allege that the Secretary failed to obtain the advice and recommendation of specialists who are competent to evaluate the proposed project as required by 42 U.S.C. § 1395b–1(b).[6] Plaintiffs admit that the project was reviewed by a panel of experts on November 12, 1980. *See* Secretary's Exhibit D. Nevertheless, they contend that since the project was amended subsequent to November 12, 1980, the panel's review and recommendations does not fulfill the requirements of § 1395b–1(b).

The Court finds that the panel's review and recommendations comply with § 1395b–1(b). This provision does not require the Secretary to seek the advice of these specialists every time the project is amended. In particular, it is implicit that the Secretary can amend the project pursuant to the specialists' advice without a subsequent consultation with these specialists. After all, this section requires only the advice of specialists, not their ultimate approval of the project. In the case at bar, the Court finds that the Secretary clearly complied with both the spirit and the language of § 1395b–1(b).

D. *Federal Requirement that Participation in the Demonstration Project Be Voluntary.*

■ Plaintiffs assert that the Secretary's approval of the demonstration project is in violation of his "Guidelines for Incentive Reimbursement Experiments," issued in 1968. *See* Secretary's Exhibit E. These Guidelines indisputably require that participation in these projects be voluntary.

However, this claim is wholly without merit, given that the said Guidelines are no longer effective. The Guidelines were issued to implement section 402 of the Social Security Amendments of 1967. *See* Secretary's Exhibit J. That section was completely rewritten by § 222(b) of the 1972 amendments to the Social Security Act. After the 1972 amendment, the Secretary issued superseding guidelines, Health Care Financing Administration Experiments and Demonstrations Projects. *See* Secretary's Exhibit R. These latter guidelines, which implement the 1972 amendments, do not require that participation in these projects be voluntary. Thus, the 1968 guidelines have been superseded by the 1972 guidelines.

E. *Submission of the Project for Review and Approval by an Institutional Review Board.*

■ Plaintiffs allege in their complaint that the project should be enjoined because the Department failed to submit the project to an Institutional Review Board (IRB) for review and approval as required by 45 C.F.R. § 40.102(a). The said regulation provides that IRB review is required only when the project involves human subjects. The Court finds that such procedure was not required in this case because this project does not involve human subjects.

F. *Whether the Project Imposes Additional Charges on Non-Medicare and Non-Medicaid Patients in Violation of the Social Security Act.*

■ Plaintiffs contend that the project will impose additional charges on non-Medicare and non-Medicaid patients in violation

---

**6.** 42 U.S.C. § 1395b–1(b) states in part that [n]o experiment or demonstration project shall be engaged in or developed under subsection (a) of this section until the Secretary obtains the advice and recommendations of specialists who are competent to evaluate the proposed experiment or demonstration project as to the soundness of its objectives, the possibilities of securing productive results, the adequacy of resources to conduct the proposed experiment or demonstration project, and its relationship to other similar experiments and projects already completed or in process.

of 42 U.S.C. § 1396a(a)(13)(D) and 42 U.S.C. § 1395x(v)(1)(A). The provision applicable to the Medicaid program, 42 U.S.C. § 1396a(a)(13)(D),[7] contains no requirement that a project must not impose additional charges on non-Medicaid or non-Medicare patients. Furthermore, since the Secretary lawfully waived this provision, pursuant to 42 U.S.C. § 1315 and § 1395b-1(b), compliance with it is irrelevant. Plaintiffs' claim regarding Medicare is also without merit, given that the project has been approved only for Medicaid and that to this day the Department has not sought the Secretary's approval for Medicare.

Plaintiffs' additional claim that the project violates the reasonable cost reimbursement requirements of 42 U.S.C. § 1396a(a)(13)(D) is meritless. As the Court has already ruled, the Secretary had the authority to waive this requirement, which he did. *See* Secretary's Exhibit H. Therefore, the Department is not required to comply with § 1396a(a)(13)(D) pursuant to the Secretary's waiver.

G. *Individual Notices to the Hospitals.*

Plaintiffs assert that the Department violated 42 C.F.R. § 447.205 because it failed to provide sixty days prior written notice to hospitals of the proposed change in the method and level of reimbursement. Alternatively, they contend that the Department's public notices are not in compliance with the above section. Assuming that § 447.205 is applicable to this project, the Court finds that the Department's public notice clearly complies with § 447.205. *See* State's Exhibits O, P, and Q and S.

H. *Whether Sufficient Services Are Available to Medicaid Recipients Under the Project.*

 Plaintiffs' claim that the project violates 42 C.F.R. § 447.204 because Medic-

aid payments will not be sufficient to assure that hospital services remain available to Medicaid recipients, at least to the extent those services are available to the general public, is without merit.

I. *Whether the Project was Approved by the Required Officials of HHS.*

 Plaintiffs' allegations that the project was not approved by all the required officials of HHS is meritless. Mr. Kaple's affidavit specifically states that Mr. Howard Newman, Administrator of HCFA, on December 31, 1980, instructed him "to award the grant and related waivers." Secretary's Exhibit B at ¶ 4. Thus, it is clear that Mr. Newman, on behalf of the Secretary, approved the said project and plaintiffs do not contend that he lacked the authority to do so.

J. *The Secretary's Retroactive Approval of the State Plan Amendment.*

Plaintiff-intervenor contends that the Secretary violated 42 U.S.C. § 1396a(a)(13)(D)[8] by approving an amendment to the project on March 5, 1981, and making it effective retroactively to January 1, 1981. As noted below at page 15, the Secretary's waiver of section 1396a makes it irrelevant whether defendants have complied with its terms. Therefore, this claim is without merit.

K. *Constitutional Issues.*

Plaintiffs argue that the project violates the due process clause of the U. S. Constitution because (1) it reduces hospital reimbursement, (2) it is subject to abrupt change without notice, and (3) it is too complex and subjective. As discussed be-

---

**7.** 42 U.S.C. § 1396a(a)(13)(D) states that a State Medicaid plan *must provide*

for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with section 13209-1 of this title, which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the

plan, except that the reasonable cost of any such services ... shall not exceed the amount which would be determined under section 1395x(v) of this title [42 U.S.C. § 1395x(v)(1)(A) ] as the reasonable cost of such services for purposes of subchapter XVIII of this chapter;

**8.** *See* n. 7, infra.

low, the Court finds these claims to be without merit.

■ First, plaintiffs, as providers of medical services, have no constitutionally cognizable property interest in continued reimbursement under the Medicaid and Medicare programs.[9] *Cervoni v. Secretary of Health, Education & Welfare*, 581 F.2d 1010, 1017–1019 (1st Cir. 1979). Second, plaintiffs have no constitutional right to "reasonable cost" reimbursement. Section 1396a(a)(13)(D) of title 42 gives the States great discretion in defining reasonable costs and in adopting reimbursement systems. As previously stated by this Court,

> [p]roviders of services are not required to participate in a state's Medicaid program, but if they choose to participate, they must agree to accept payment in accordance with the state plan provisions... The Medicaid program is not designed to protect providers from the consequences of their business decisions or from business risks. *The Medicaid Act and implementing regulations grant the states a wide discretion in determining fee structures.*

(Emphasis added.) *Briarcliff Haven, Inc. v. Department of Human Resources of Georgia*, 403 F.Supp. 1355, 1362–63 (N.D.Ga. 1975) (Moye, J.). Nevertheless, plaintiffs contend that they have been deprived of a property interest without due process of law because those hospitals, including two plaintiffs in this action, which are required by Federal law, 42 U.S.C. § 300o, *et seq.*, and 42 C.F.R. § 124.603(c)(1)(ii), to participate in the Medicaid program in perpetuity, are now compelled to continue providing Medicaid services, but at a reimbursement level below the actual costs of those services. The flaw in this argument is that these hospitals are required to continue providing Medicaid services only because they accepted "Hill-Burton" hospital construction funds, 42 C.F.R. § 124, which like other Federal fundings, are contingent on the recipient's compliance with myriad regulations. Having freely agreed to subject themselves to the said regulations in exchange for Federal funds, these hospitals cannot now argue that continued compliance with these regulations, as well as the project's guidelines, deprives them of a property interest without due process of law.

■ The Court finds plaintiffs' claim that the project is subject to abrupt change without notice in violation of due process without merit. Such claim is speculative and hypothetical at this point, since no abrupt changes have occurred. Moreover, if the Department plans any substantial change in the project, it will need prior approval by the Secretary. Furthermore, if the proposed change will cause a projected variation of at least one percent in hospital reimbursement, the Department is required by 42 C.F.R. § 447.205 to provide public notice at least sixty days in advance. The Court also finds plaintiffs' argument that the project is too complex and subjective not persuasive.

### L. State Law Claims.

■ Plaintiffs additionally contend (1) that defendants failed to comply with the Department's regulations, (2) that neither the project nor the State Plan Amendment was ever approved by the Board of Medical Assistance as required by Ga.Code Ann. § 99–4604, (3) that the project was implemented in violation of the Department's Provider Agreement, and (4) that the project violates Ga.Code Ann. § 99–4603, which authorizes the Department to receive the maximum amount of Federal financial participation for its Medicaid program. After careful review, the Court finds no merit in these arguments.

### M. Procedural Errors.

■ Even were we to assume that procedural errors occurred in defendants' formulation and/or implementation of the project, courts "do not function to strike down agency action because of merely for-

---

**9.** Procedural due process protections apply only when a person is deprived "of life, liberty, or property, without due process of law...." U. S. Constitution, Amendment V.

mal or technical flaws." *Alabama Association of Insurance Agents v. Board of Governors of the Federal Reserve System,* 533 F.2d 224, 236 (5th Cir. 1976), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). There the court held that, where there are procedural violations, it must be determined whether "any procedural flaw so subverts the process of judicial review that invalidation of the regulation [or project] is warranted" under the circumstances. *Id.* at 236–37.[10]

In the case at bar, the Court finds that any procedural flaws that might have occurred in the long and complex path of formulating and implementing this demonstration project are not of such magnitude as to require invalidation of the project. Given plaintiffs' extensive involvement in the development of the project, as reflected in the record, their procedural allegations are unpersuasive. Plaintiffs certainly cannot complain that their views were not heard or given adequate consideration. Thus, under the facts of this case, the Court does not find any procedural error which would warrant striking down the hospital reimbursement demonstration project. *See EEOC v. AirGuide Corp.,* 539 F.2d 1038, 1042 (5th Cir. 1976).

Any argument not specifically addressed in this order is found to be without merit.

N. *Conclusion.*

In conclusion, the Court finds that there are no disputed issues as to any material facts and that defendants are entitled to summary judgment as a matter of law. Therefore, the Court hereby GRANTS defendants' motions for summary judgment and DENIES plaintiffs' motion for summary judgment. The Clerk is DIRECTED to enter judgment for defendants against plaintiffs.

---

10. The court found the following factors relevant to this inquiry: (1) the nature and content of the regulation and underlying legislation; (2) the extraneous material available to explain the basis and purpose of the agency action; and (3) the quantum of action taken in reliance on the regulation. *Id.*