**PENNSYLVANIA PHARMACEUTICAL ASSOCIATION, a Pennsylvania Non-Profit Corporation, et al., Plaintiffs,**

v.

**The DEPARTMENT OF PUBLIC WELFARE OF the COMMONWEALTH OF PENNSYLVANIA, et al., Defendants.**

Civ. A. No. 80–1790.

United States District Court,
W. D. Pennsylvania.

July 9, 1982.

Richard Thomas, Pittsburgh, Pa., for plaintiffs.

John G. Knorr, III, Atty. Gen., Harrisburg, Pa., William Webb, Deputy Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

DIAMOND, District Judge.

Presently before the court is the defendants' motion for partial judgment on the pleadings, which will be granted.

### I.

The plaintiffs in this action are the Pennsylvania Pharmaceutical Association, an association of 2500 pharmacies; seven incorporated pharmacies; the owners-pharmacists of these pharmacies (collectively referred to as the pharmaceutical plaintiffs); and two Medicaid recipients. Plaintiffs brought this suit against the Pennsylvania Department of Public Welfare (DPW); Helen O'Bannon, the Secretary of DPW; and Gerald F. Radke, the Deputy Secretary for Medical Assistance, for alleged violations of the Federal Medicaid program.[1] The plaintiffs contend that the State's reimbursement to pharmacists for prescription drugs purchased by Medicaid recipients fails to comply with the Federal statute establishing the Medicaid program, 42 U.S.C. § 1396a (1974), and the regulations promulgated by the Secretary of Health and Human Services to implement the Medicaid program. *See* 42 C.F.R. § 447.204 (1980); 42 C.F.R. 447.331 et seq. (1980). The defendants maintain that the State's reimbursement program fully complies with federal mandates.

#### A.

Through Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (1974), commonly referred to as the Medicaid program, Congress devised a cooperative federal-state venture to deliver health care services to the poor. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Participation by an individual state is entirely voluntary. *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). However, once a state opts to participate it must comply with the requirements of the Medicaid Act. *Id.*

A state that elects to join the Medicaid program must submit a "state plan" to the Secretary of Health and Human Services for his approval. 42 U.S.C. § 1396 (1974). To comply with the Congressional requirements of the Medicaid act, the state plan must provide for medical assistance to those termed "categorically needy", 42 U.S.C. § 1396a(a)(10)(A) (Supp.1982), and to those found to be "medically needy". 42 U.S.C. § 1396a(a)(10)(C) (Supp.1982). The state plan must offer these individuals inpatient hospital services, outpatient hospital services, laboratory and X-ray services, nursing facilities, physician care, and other medical care deemed necessary by the Secretary. 42 U.S.C. § 1396a(a)(10) (Supp.1982). In

1. The court previously has granted the defendant DPW's motion to dismiss on the ground that the Eleventh Amendment deprived this court of jurisdiction over the Department. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The remaining defendants, Helen O'Bannon and Gerald Radke, are officials of the Commonwealth of Pennsylvania, and will be referred to as the State.

addition to those mandatory requirements, a state plan *may* offer to underwrite the cost of drugs prescribed for Medicaid recipients. 42 U.S.C. § 1396d(a)(12) (1974). To facilitate the implementation of the Medicaid program, Congress authorized the Secretary to promulgate regulations necessary to promote the "efficient administration" of programs assigned to his agency. 42 U.S.C. § 1302 (1974).

At the time this action was brought, the Medicaid Act required that a state plan for medical assistance:

> (30) provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care; 42 U.S.C. § 1396a(a)(30) (1974) [2]

Pursuant to this section and the overall purpose of the Act, the Secretary has issued several regulations to control the cost of prescription drugs. In a section of those regulations titled "Drugs: Upper limits of payments", states are directed "not [to] pay more for prescribed drugs than the lower of ingredient cost plus a reasonable dispensing fee or the provider's usual and customary charge to the general public." 42 C.F.R. § 447.331(a) (1980). The ingredient cost is further defined as the lesser of a predetermined sum established by the Secretary, known as the maximum allowable cost (MAC), 42 C.F.R. § 447.332(a)(1) (1980), or the estimated acquisition cost (EAC), which "means the state's best estimate of what price providers generally are paying for a drug." 42 C.F.R. § 447.332(c)(2) (1980). The regulations also permit a state to pay pharmacies a dispensing fee based on a survey of a statewide pharmacies' costs that are composed of allocated overhead and profit. 42 C.F.R. § 447.333 (1980). These regulations have been retained verbatim in the 1981 regulations. *See* 46 F.R. 48560, October 1, 1981.

## B.

The complaint in the case *sub judice* consists of three counts. Count one charges that the dispensing fee of $2.25 paid by the

---

**2.** As part of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, Title XXI § 2174(a), 95 Stat. 809, Congress amended 42 U.S.C. § 1396a(a)(30) to read:

> (30) provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care; 42 U.S.C. § 1396a(a)(30) (Supp.1982)

However, the court does not find that the deletion of the phrase, "not in excess of reasonable charges", 42 U.S.C. § 1396a(a)(30) (1974), imposes a duty on states to make minimum payments to pharmacists or to increase the payments to pharmacists so that more pharmacists will profit from participation in the Medicaid program. The amended section still requires that payments be consistent with "economy" and "efficiency," and the Secretary in light of this amendment has retained the regulation limiting reimbursement for drugs to the cost of

the drug plus a dispensing fee. 46 F.R. 48560 October 1, 1981. Congress did not provide that pharmacies were to be paid their "reasonable" costs as Congress specifically did for nursing homes and rural health clinics. *See* 42 U.S.C. § 1396a(a)(13) (Supp.1982). The court is bound to construe the duties imposed by a cooperative funding program strictly. *Pennhurst State Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *See also Hendrick Hudson Central School District Board of Education v. Rowley*, —— U.S. ——, —— fn. 26, 102 S.Ct. 3034, 3049 fn. 26, 73 L.Ed.2d 690 (1982). In light of these considerations, the plaintiffs' position that the deletion of the phrase "not in excess of reasonable charges" imposes a duty upon the State to pay pharmacists their reasonable costs plus a profit is untenable. Section 1396a(a)(30) (Supp.1982) does require that payments be consistent with quality care, but, as we indicate later, the pharmaceutical plaintiffs do not have standing to challenge the State's reimbursement schedule on the basis that these payments have deprived medicaid recipients access to quality pharmaceutical services. *See infra* III.

State pursuant to State regulation 55 Pa. Code § 1121.55 is not supported by a recent survey. Thus, the plaintiffs argue that the dispensing fee is unreasonably low. Count two attacks the State's method of computing the EAC of a drug. State regulations limit reimbursement for the cost of legend drugs to the arithmetic average cost of the six largest drug wholesalers that are willing to provide cost data to the State. 55 Pa. Code § 1121.56(a). Nonlegend drugs may be reimbursed "based on the current average wholesale price appearing in the Drug Topics Red or its bi-monthly and quarterly supplements." 55 Pa.Code § 1121.56(b). Plaintiffs contend that these regulations result in payment to pharmacies below their costs for the drugs. Count three alleges that the State's reimbursement schedule has discouraged so many pharmacies from participating in the Medicaid program that recipients of Medicaid do not have adequate access to pharmacies as required by federal regulations. 42 C.F.R. § 447.204 (1980).

State contends that the Medicaid program and the Medicaid regulations only place caps on the reimbursement level that a state *may authorize* for drugs and that the Medicaid program imposes no duty on a state to pay these maximum reimbursement figures. Thus, State argues that its only duty under the Medicaid program is to pay no more than the maximum levels authorized by the regulations. To determine these maximum levels the State must use surveys of typical dispersing fees and drug costs. However, if the State chooses to pay less than the maximum level, its reimbursement fee can be challenged only if the reimbursement fee is so low that Medicaid recipients are effectively denied access to pharmacies because they refuse to participate in a program that provides inadequate remuneration for their services. Although State recognizes that it has a duty to provide adequate access for Medicaid recipients to pharmaceutical services, it argues that only Medicaid *recipients* have standing to raise this issue.

### C.

State acknowledges that once it chooses to participate in the Medicaid program it must abide those Federal duties imposed upon state participants. *McRae, supra, King, supra.* These duties imposed upon states for participation in a cooperative funding scheme are the *quid pro quo* for the receipt of federal money. *Pennhurst State School v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *See also Hendrick Hudson Central School District Board of Education v. Rowley,* —— U.S. ——, —— fn. 26, 102 S.Ct. 3034, 3049 fn. 26, 73 L.Ed.2d 690 (1982). But these duties must be set forth unambiguously by Congress and the court must construe the duties strictly. *Pennhurst, supra.*

In this action the plaintiffs bear the burden of isolating some duty imposed by the Medicaid Act and the regulations promulgated thereunder upon the State for the benefit of the plaintiffs with which the State has failed to comply. *Cf. Texas & Pacific Railway Company v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916); *Eder v. Beal,* 609 F.2d 695 (3rd Cir. 1979). In this regard, the plaintiffs contend that the Medicaid program imposes two positive duties on the State. First, plaintiffs argue, the Medicaid program requires the State to conduct periodic surveys to determine an appropriate dispensing fee for, and the cost of drugs to, pharmacies. 42 C.F.R. § 447.332, 333 (1980). Second, plaintiffs contend that State must provide sufficient remuneration to its health care providers to ensure that their "services ... are available to recipients at least to the extent that those services are available to the general population." 42 C.F.R. § 447.204 (1980). We consider these arguments below.

### II.

■ In Counts I and II of their complaint, the plaintiffs take the position that the language of the federal regulations mandates that a state undertake efforts to obtain its "best estimate of what price providers generally are paying for a drug." 42 C.F.R. § 447.332(c)(2) (1980), and in addition, also to "periodically survey pharmacy

operations including—(1) [o]perational data, (2) [p]rofessional services data; (3) [o]verhead data; and (4) [p]rofit data." 42 C.F.R. § 447.333(a) (1980).

The court cannot accept an interpretation of these two regulations that places a routine positive duty on the states to conduct periodic surveys. The plaintiffs have isolated two passages out of the two regulations that define the terms "cost" of drugs and "dispensing fee" as they are used in a preceding regulation, 42 C.F.R. § 447.331 (1980). This regulation sets the maximum payment a state may make to pharmacies for prescription drugs. The regulation prohibits states from paying more for "prescribed drugs than the lower of ingredient cost plus a reasonable dispensing fee or the provider's usual and customary charge to the public." 42 C.F.R. § 447.331(a) (1980). Thus, these regulations do not impose any duty on the State to survey periodically to re-evaluate its reimbursement payment. Rather, the regulations function only as guides to *enable* the states to make the *maximum* reimbursement allowable under the law *if they choose to do so.* Of course, the plaintiffs have never charged that the State is reimbursing pharmacies in excess of the maximum level. The plaintiffs' complaint is that State's reimbursement figure is arbitrarily low.[3] But we do not read these regulations as imposing a duty on the State to pay a higher reimbursement level than it is now paying. On the contrary, the regulations clearly imply that the State may pay less than the maximum level.

The predecessor regulation specifically stated that "[t]he State agency may pay less than the upper limits." 45 C.F.R. § 450.30(b) (1977). That regulation was merged with other regulations and is now 42 C.F.R. § 447.252 (1980). 43 F.R. 45176, September 29, 1978. The present regulation states that:

**3.** *See* Complaint ¶ s 30, 41, 42.

**4.** Redesignated 42 C.F.R. § 447.304 (1981) at 46 F.R. 48560, October 1, 1981.

(a) The Medicaid agency must not pay more than the upper limits described in this subpart.

. . . .

(c) FFP [Federal financial participation] is available *in expenditures for payments for services* that do not exceed upper limits. 42 C.F.R. § 447.252(a), (c) (1980)[4] (emphasis added).

It is clear from the foregoing that a state can obtain matching federal funds for any payments that are equal to or less than the upper limits authorized. But there simply is nothing in the regulations which requires a state to reimburse pharmacists in an amount that matches their reasonable costs plus a profit or to equal the maximum reimbursement level. Indeed, it follows logically that a state could conduct a survey of current pharmacy costs and then pay pharmacies less than the reasonable costs indicated by the survey and not violate any regulation.

Our interpretation of the Secretary's regulations is consistent with generally recognized rules of statutory construction.[5] In construing the meaning of an individual section of a regulation, one must construe that section in light of the entire regulations. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), *National Labor Relations Board v. Lion Oil Company*, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957). The plaintiffs simply fail to recognize that the phrases "the agency's best estimate", 42 C.F.R. § 447.332(c)(2), and "[t]he agency must periodically survey", 42 C.F.R. § 447.333(a), are part of an overall scheme to limit the cost of drugs. These phrases merely direct a state to undertake certain actions *if it wishes to pay the highest possible fee authorized.*

The plaintiffs cite *Empire State Pharmaceutical Society v. Blum*, C.A. No. 81–1786 (S.D.N.Y. July 16, 1981) for the proposition that 42 C.F.R. § 447.333(a) places a duty on a state to conduct a survey of pharmaceuti-

**5.** Administrative regulations are to be construed in the same manner as statutes. *Rucker v. Wabash Railroad*, 418 F.2d 146 (7th Cir. 1969); *Borelli v. Reconstruction Finance Corporation*, 196 F.2d 730 (Emer.Ct.App.1952).

cal costs every three years and to use that survey in calculating a dispersement fee. To the extent that *Empire State* does so hold, we must disagree with it for the reasons we have stated which we believe are consistent with the court's ruling in *Ostrow Pharmacies, Inc. v. Beal*, 394 F.Supp. 22 (E.D.Pa.1975), *aff'd mem.*, 527 F.2d 645 (3rd Cir. 1976). There the court stated that:

> Regulation [45 C.F.R.] § 250.30 [the predecessor to 42 C.F.R. 447.331–4] does not establish a minimum fee for pharmaceutical services; it sets forth the upper limit or maximum fee to be paid pharmacists. The purpose of the regulation is to achieve the lowest cost for medical services consistent with efficiency, economy and quality of care. The thrust of the plaintiffs' complaint and the evidence which they presented is that the $1.85 dispersing fee is too low and after considering overhead and professional services, will not provide them with a profit or will cause them to operate at a loss. *Id.*, at 27.

The plaintiffs also cite *Arkansas Pharmacists Association v. Harris*, 627 F.2d 867 (8th Cir. 1980) and *American Medical Association v. Mathews*, 429 F.Supp. 1179 (N.D.Ill. 1977) as authority for the proposition that the State has violated the Medicaid Act. Neither of these cases aids the plaintiffs because in both cases the issue was whether the Secretary of Health and Human Services had authority to promulgate the regulations in question. In both cases the courts concluded that the Secretary had such authority. Neither case involved an attack on a state program for failure to pay the upper limits authorized in the regulations. Thus we conclude, as the court did in *Ostrow*, that these upper-limit regulations do not impose a duty on a state to conduct surveys and thereafter to pay pharmacists the reasonable cost of drugs plus a profit. Counts I and II therefore fail to state a claim upon which relief can be granted, and the defendants' motion for judgment on the pleadings as to these two Counts will be granted.[6]

### III.

In Count III of their complaint the plaintiffs allege that due to the State's arbitrary

---

**6.** The plaintiffs have made a vague reference to issues of fact that preclude the granting of the defendants' motion for partial judgment on the pleadings, but the plaintiffs have not developed this fully. The interpretation of legislation and regulations is a matter of law for the court. *Lubrizol Corporation v. Environmental Protection Agency*, 562 F.2d 807 (D.C.Cir.1977); *Enochs v. Smith*, 359 F.2d 924 (5th Cir. 1966). Summary judgment is appropriate where the court is called upon to construe the legal duties imposed by a statute. *Mobil Oil Corporation v. Federal Energy Administration*, 435 F.Supp. 983 (N.D.Tex.) *aff'd*, 566 F.2d 87 (Emer.Ct.App. 1977)

Under the applicable rules of construction, if the language of a statute is clear and unambiguous the court need look no further in construing the statute. *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Where ambiguity exists, the court should consider the legislative history of the statute and other extrinsic material to construe the statute. *Blanchette v. Connecticut General Insurance*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *United States v. Devonian Gas & Oil Company*, 424 F.2d 464 (2nd Cir. 1970). The subsequent comments of legislators carry little persuasive weight in determining the intent behind the statute's enactment. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

The plaintiffs have offered the Medicaid Assistance Manual Guidelines for Payment of Reasonable Charges for Prescribed Drugs effective in 1977 and a draft of the revised Guidelines dated February 27, 1981, in support of their interpretation of regulations 447.331–3. However, these guidelines at most support the court interpretation of the duties imposed by the regulations. The Guidelines point out that if reimbursement levels are too high tax dollars will be wasted and the regulations will be violated and if payments are too low there is a chance that participation by pharmacists may result in inadequate access to pharmaceutical care. Guideline 6–160–§ 32(A); Draft of revised Guidelines 6–160–32(A). The court has resolved this dilemma by concluding that regulations 447.331–3 do not impose on a state any duty to survey or to pay a reasonable reimbursement rate. Rather, for a state to fulfill its duty under the regulations it need only make payments within the upper limits authorized and at a level sufficient to ensure Medicaid recipients adequate access to pharmaceutical services. As we hold in Section III of this opinion, only Medicaid *recipients* have standing to question the sufficiency of the reimbursement level to ensure the availability of pharmaceutical services.

payment schedule, pharmacies are withdrawing from participation in the State Medicaid program at a rate that "has resulted, or will in the future result, in a level of provider participation which is inadequate under the Federal Medicaid Act and regulations . . . ." Complaint ¶ 50.

The plaintiffs claim that this declining participation of pharmacies in the Medicaid program has resulted in the State's violation of regulation 42 C.F.R. § 447.204 (1980). That regulation provides that:

> The agency's payments must be sufficient to enlist enough providers so that services under the plan are available to recipients at least to the extent that those services are available to the general population. 42 C.F.R. § 447.204 (1980); reprinted verbatim in the 1981 regulations.

State contends that only Medicaid recipients have standing to sue for the claim asserted in Count III. Based on this proposition, State has moved to dismiss all of the plaintiffs except Ina Floyd and Rita Pfeister, the only Medicaid recipients among the various plaintiffs.

### A.

The question of standing encompasses constitutional limitations on a Federal court's jurisdiction and certain non-constitutional jurisprudential considerations that govern the exercise of Article III powers. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To overcome the constitutional barriers of standing, a plaintiff must allege "some actual or threatened injury"; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); that can be traced to some act or omission of the defendant and that plaintiff's injury may be redressed through a court's remedial powers. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Even if a plaintiff alleges an actual injury caused by the defendant, the plaintiff will still be barred from presenting his claim in a judicial forum if jurisprudential considerations dictate the judiciary's abstention from exercise of its Article III power. *Warth, supra, See United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). Even if a plaintiff has suffered an injury in fact, the plaintiff must establish that he is within the zone of interests that Congress intended to protect by virtue of the statute under which the suit is brought. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Kirby v. United States Government,* 675 F.2d 60 (3rd Cir. 1982); *Control Data Corporation v. Baldridge,* 655 F.2d 283 (D.C. Cir.) *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981); *See also, Simons, supra,* at fn. 19. Once the plaintiff has demonstrated that he is within this zone of interest, the jurisprudential considerations of standing have been satisfied. *Kirby, supra.*

### B.

The plaintiffs allege that the State's reimbursement level is substantially below the reasonable cost of drugs to pharmacists and that these inadequate payments have driven a number of pharmacists either to refuse to fill certain prescriptions of Medicaid recipients or to withdraw altogether from the State Medicaid program with a resultant loss of the prescription and non-prescription business of Medicaid recipients. Plaintiffs further allege that those pharmacies that have continued their voluntary participation in the program have suffered losses because of the State's inadequate reimbursement schedule. These allegations arguably make out a claim for economic loss, but they are not conclusive on whether pharmaceutical plaintiffs are within the zone of interest to be benefited by federal welfare programs.[7]

### C.

Congress enacted Title XIX of the Social Security Act to provide health care

---

**7.** For a plaintiff to have standing, his injuries must have been *caused* by the actions of the defendant. *Simons v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). In the present case, some pharmaceutical plaintiffs have lost

**1356**

for the poor and aged, not to subsidize or otherwise to benefit health care providers. *Green v. Cashman,* 605 F.2d 945 (6th Cir. 1979); *Georgia General Hospital Association v. Department of Medical Assistance,* 528 F.Supp. 1348 (N.D.Ga.1982); *Briarcliff Haven, Inc. v. Department of Human Resources,* 403 F.Supp. 1355 (N.D.Ga.1975). By design the Medicaid program is structured to provide needed medical services to the poor in the most economical and efficient manner. *Arkansas Pharmacists Association v. Harris,* 627 F.2d 867 (8th Cir. 1980); *Illinois Council for Long Term Care v. Miller,* 503 F.Supp. 1091 (N.D.Ill.1980). A state participating in the Medicaid program has no duty to administer its state plan in such a manner as to guarantee a profit to an inefficient health care provider. If a provider finds participation in the program unprofitable he should withdraw from the program. *Minnesota Association of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare,* 602 F.2d 150 (8th Cir. 1979); *Case v. Weinberger,* 523 F.2d 602 (2nd Cir. 1975).

As we have previously indicated, the Secretary is authorized to issue regulations to control costs and to ensure that health care services are in fact delivered to the poor. 42 U.S.C. § 1302 (1974). Pursuant to this authority, the Secretary has mandated that a state "agency's payments must be sufficient to enlist enough providers so that services under the plan are available to recipients at least to the extent that those services are available to the general population." 42 C.F.R. § 447.204 (1981). We conclude that this regulation does not create standing in pharmacists to challenge the sufficiency of a state's reimbursement schedules. The poor, not the health care providers, are the intended beneficiaries of the Medicaid Act. *Green, supra.* Nowhere in the legislative history of the Medicaid Act is there any indication that Congress sought to prop up failing pharmacies or to

encourage the founding of more pharmacies through the passage of the Medicaid Act. In some instances, Congress has specifically provided for minimum reimbursement levels for certain types of health care providers, e.g., hospitals, nursing facilities, intermediate care units, and rural health clinics. 42 U.S.C. § 1396a(a)(13) (Supp.1982). No such similar provision exists to support pharmacies. Accordingly, we find that Congress did not vest the pharmaceutical plaintiffs with an interest to challenge a state's payment schedules on the ground that these payments are insufficient to encourage participation in that state's Medicaid program. *Accord, Pharmacist Political Action Committee of Maryland v. Harris,* 502 F.Supp. 1235 (D.Md.1980).

In summary, we conclude that Counts I and II of the Complaint fail to state a claim upon which relief can be granted and that the pharmaceutical plaintiffs do not have standing to sue under Count III.

ACCORDINGLY, the defendants' motion for partial judgment on the pleadings will be granted.

---

money by their own voluntary choice to fill prescriptions at below cost prices. As to these plaintiffs, it would appear that they fail even to satisfy the cause-of-injury requirements, but even as to them we will rest our decision on the

zone-of-interests test of the standing requirement, because it is clear that the pharmaceutical plaintiffs are not within that group that Congress intended to benefit through the enactment of the Medicaid program.