STATE of Indiana, DEPARTMENT of PUBLIC WELFARE, State Board of Public Welfare, Robert G. Watson, Jr., James W. Burnett, Jr., Mrs. Marian M. Hilger, Mrs. Nellie M. Mosely, and John R. Sefrin, Ph.D., As Members of the State Board of Public Welfare, and Donald Blinzinger, as Administrator of the State Department of Public Welfare, Defendants-Appellants,

v.

William R. BAIR, Brice L. Hawkins and Everett S. Palmer, In Behalf of Themselves and All other Licensed Pharmacists in the State of Indiana Furnishing Prescription Drugs as Providers Pursuant to IC 12-1-7-15 *et seq.* in the Medical Assistance Program of the State Department of Public Welfare, Plaintiffs-Appellees.

No. 1-983 A 283.

Court of Appeals of Indiana, First District.

June 5, 1984.

Linley E. Pearson, Atty. Gen., Gordon E. White, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

Roy Spilker, Roy F. Spilker, P.C., Frank E. Spencer, Indianapolis, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The defendants appeal from a judgment of the Hancock Circuit Court granting injunctive and declaratory relief to the plaintiffs.

We reverse.

## FACTS

The named plaintiffs, William Bair, Brice Hawkins, and Everett Palmer, initiated their class action lawsuit [1] on November 30, 1976, on behalf of themselves and the class of all pharmacists certified to participate in the Indiana Medical Assistance program. The plaintiffs alleged therein they were licensed pharmacists who, pursuant to Indiana Code section 12–1–7–15, furnished prescription drugs as "providers" to recipients under the program. Further, the plaintiffs asserted that as providers they were entitled to reimbursement for their services in the amount of their usual and ordinary fees paid in their respective communities and that the defendants had failed to establish the necessary standards and procedures to ensure such reimbursements. Accordingly, the plaintiffs sought injunctive and declaratory relief to force the defendants to adopt the necessary standards and to make proper reimbursements.

Following lengthy preliminary proceedings the cause came to trial on March 31, 1983, at which time the defendants moved to dismiss the complaint on grounds the plaintiffs lacked standing. This motion was denied, however, and on May 31, 1983, judgment was entered in favor of the plaintiffs.

## ISSUES

Although several issues are raised by the defendants, one is dispositive of the case. Restated, it is whether the plaintiffs, as pharmacists, lacked the requisite standing to challenge the reimbursement scheme provided in the Indiana Medical Assistance program.

## DISCUSSION AND DECISION

The defendants argue and we agree that the plaintiffs lacked the requisite standing to challenge the reimbursement scheme administered by the Department of Public Welfare under the Indiana Medical Assist-

ance program. Accordingly, the judgment of the trial court is reversed.

Like many states, Indiana participates in a jointly funded federal-state Medicaid program established under Title XIX of the Social Security Act, § 1901, *et seq.*, 42 U.S.C. § 1396, *et seq.* Indiana Code section 12–1–7–14.9. *See Dixon v. Stanton,* (N.D. Ind.1979) 466 F.Supp. 335, 337. Under this program health care providers,[2] such as the plaintiffs, are entitled to reimbursement "for all medical services rendered or materials supplied" to recipients, in the amount of the "usual and ordinary fees or charges paid in the community for services or materials commensurate with the usual and ordinary standards of service in such counties." Indiana Code section 12–1–7–17. The plaintiffs contend the defendants have ignored these provisions by failing to establish the requisite standards and procedures for reimbursement in accordance with the statutory language. The trial court agreed and decreed that the

> "Defendant State Department of Public Welfare and Defendant State Board of Public Welfare are now herein enjoined, ordered and directed to determine by the lawful promulgation of rules and regulations, the supplemental standards and procedures which are necessary to implement the minimum and maximum level requirements of reimbursement to the Plaintiffs and the said Class of Providers for their dispensing of prescription drugs, including the cost of such prescription drugs …"

Record at 132.

Countering this argument, the defendants contend the plaintiffs lacked standing to assert their claim and direct our attention to several recent federal decisions which have addressed this precise issue.

In *Pennsylvania Pharmaceutical Association v. Department of Public Welfare*

---

**1.** The class was certified by the trial court on January 25, 1978, pursuant to Indiana Rules of Procedure, Trial Rule 23(B)(3).

**2.** This term is defined in Indiana Code section 12–1–7–14.9.

of the Commonwealth of Pennsylvania, (W.D.Pa.1982) 542 F.Supp. 1349, the Pennsylvania statutory reimbursement scheme [3] was challenged by a group of plaintiffs consisting of pharmacists and two Medicaid recipients. In finding only the recipients had standing to the exclusion of the pharmacists, the court stated:

"Congress enacted Title XIX of the Social Security Act *to provide health care for the poor and aged, not to subsidize or otherwise to benefit health care providers.* Green v. Cashman, 605 F.2d 945 (6th Cir.1979); *Georgia General Hospital Association v. Department of Medical Assistance,* 528 F.Supp. 1348 (N.D.Ga.1982); *Braircliff Haven, Inc. v. Department of Human Resources,* 403 F.Supp. 1355 (N.D.Ga.1975). By design the Medicaid program is structured to provide needed medical services to the poor in the most economical and efficient manner. *Arkansas Pharmacists Association v. Harris,* 627 F.2d 867 (8th Cir. 1980); *Illinois Council for Long Term Care v. Miller,* 503 F.Supp. 1091 (N.D.Ill. 1980). A state participating in the Medicaid program has no duty to administer its state plan in such a manner as to guarantee a profit to an inefficient health care provider. If a provider finds participation in the program unprofitable he should withdraw from the program. *Minnesota Association of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare,* 602 F.2d 150 (8th Cir.1979); *Case v. Weinberger,* 523 F.2d 602 (2nd Cir.1975).

. . . .

*The poor, not the health care providers, are the intended beneficiaries of the Medicaid Act. Green, supra.* Nowhere in the legislative history of the Medicaid Act is there any indication that Congress sought to prop up failing pharmacies or to encourage the founding of more phar-

macies through the passage of the Medicaid Act.

. . . .

Accordingly, we find that Congress did not vest the pharmaceutical plaintiffs with an interest to challenge a state's payment schedules on the ground that these payments are insufficient to encourage participation in that state's Medicaid program. *Accord, Pharmacists Political Action Committee of Maryland v. Harris,* 502 F.Supp. 1235 (D.Md. 1980)."

*Pennsylvania Pharmaceutical,* 542 F.Supp. at 1355–56 (emphasis supplied). *See also Green v. Cashman,* (6th Cir.1979) 605 F.2d 945, 946 (both Medicare and Medicaid legislation are for benefit of recipients and not providers).

Conversely, in *Thomas v. Johnston,* (W.D.Tex.1983) 557 F.Supp. 879, it was held that mentally retarded and physically disabled Medicaid recipients had standing to challenge the statutory reimbursement scheme in Texas.[4] There, the court summarily rejected the defendants' argument that providers, not recipients, had standing to bring such an action.

"Nor does the Court find persuasive Defendants' argument that Plaintiffs lack the requisite personal interest or stake in this controversy. While it is true that payments for ICF–MR care under the Medicaid program are made to providers, and that the benefits accruing to Medicaid recipients under the ICF–MR program are in one sense indirect, *it is abundantly clear that it is Medicaid recipients and not Medicaid providers who are the intended beneficiaries of the Medicaid program. See, e.g., Green v. Cashman,* 605 F.2d 945, 946 (6th Cir. 1979); *Case v. Weinberger,* 523 F.2d 602, 607 (2nd Cir.1975); *Pennsylvania Pharmaceutical Association v. Department*

---

**3.** Like Indiana's, the Pennsylvania program was enacted under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

**4.** Like the program in Indiana and Pennsylvania, the one in Texas was also adopted pursuant to Title XIX. *See* note 3 *supra.*

*of Public Welfare,* 542 F.Supp. 1349, 1355–56 (W.D.Pa.1982)."

*Thomas,* 557 F.Supp. at 903 (emphasis supplied). *See also Dialysis Centers, Ltd. v. Schweiker,* (7th Cir.1981) 657 F.2d 135, 138 (obvious purpose of Medicare program for persons suffering from chronic renal disease is to provide needed treatment for those persons and any benefit to health care providers is merely incidental).

■ In the instant case, it is obvious that the purpose of the Medical Assistance program is to ensure qualified recipients receive needed medical care and prescription drugs. Any resulting benefit to the plaintiffs is merely incidental and bears no relation to the purpose of the program. It is clear the legislation here in question is not intended to serve as a welfare program for pharmacists. *See e.g. Pennsylvania Pharmaceutical,* 542 F.Supp. at 1355–56. The plaintiffs, therefore, have no standing.

■ The plaintiffs' lack of standing thus established, it is necessary to address their argument that the defendants failed to preserve the issue for appellate review. According to the plaintiffs, even assuming, *arguendo,* they had no standing, the defendants waived the issue by failing to raise it until the day of trial. The defendants counter that the issue of standing goes to the court's subject matter jurisdiction and not merely jurisdiction over a particular case, and thus it may be raised at any time during the proceedings, even by the court *sua sponte.*

In *Board of Trustees of the Town of New Haven v. City of Fort Wayne,* (1978) 268 Ind. 415, 375 N.E.2d 1112, our supreme court held that the concepts of standing and subject matter jurisdiction are distinguishable and that before a trial court can determine whether it has subject matter jurisdiction it must first ascertain whether the complaining party has standing. "Thus, without the jurisdictional element of a case or controversy any court is without power to render a decision. Therefore, it is the law that a court must first determine that a party with standing has brought the cause and that he brings a justiciable issue before the court." *Id.* at 422, 375 N.E.2d at 1117. Hence, the court concluded, "[i]f such is not the situation, there is nothing before the court and the court is totally without jurisdiction to decide any issue in the cause." *Id.*

Thus, in the instant case, since the plaintiffs lacked the requisite standing, the trial court was without jurisdiction to address the issues presented. Moreover, because "[s]uch issue may be raised at any point during litigation and if not raised by the parties it is the duty of the reviewing court to determine the issue *sua sponte,*" *Matter of the City of Fort Wayne v. McGaharan,* (1978) 178 Ind.App. 228, 230, 381 N.E.2d 1093, 1095, *trans. denied* (1979), the plaintiffs' contention that the issue has been waived is without merit.

While this may be a bitter pill for the plaintiffs to swallow, their lack of standing demands that the trial court's judgment be reversed.

Reversed.

NEAL, P.J., and ROBERTSON, J., concur.