CHICAGOLAND CHRISTIAN VILLAGE, INC., Appellant (Plaintiff Below),

v.

Cheryl SULLIVAN, Administrator, Indiana Family & Social Services Administration; Indiana Family & Social Services Administration; Bobby L. Conner, Director, Division of Disability, Aging and Rehabilitative Services; Division Of Disability, Aging And Rehabilitative Services, Appellees (Defendants Below).

No. 49A04–9508–CV–334.

Court of Appeals of Indiana.

Oct. 9, 1996.

Randall R. Fearnow, Paul (Rick) Rauch, McNamar Fearnow & McSharar, P.C., Indianapolis, for Appellant.

Pamela Carter, Attorney General, Brian D. Scott, Deputy Attorney General, Indianapolis, for Appellees.

DARDEN, Judge.

## STATEMENT OF THE CASE

Chicagoland Christian Village, Inc. appeals a summary judgment entered in favor of the Indiana Family and Social Services Administration and Division of Disability, Aging and Rehabilitation. We reverse and remand.

## FACTS

Indiana has a Room and Board Assistance Program (RBA) pursuant to the provisions of Indiana Code 12–10–6–1 *et seq.* Indigent individuals who are elderly, blind or disabled and are incapable of residing in their own homes receive a very small personal spending stipend and have reimbursement payments made on their behalf for residential care consisting of "only room, board, and laundry, along with minimal administrative direction." I.C. 12–10–6–2(d). The Division of Disability, Aging and Rehabilitation Services (DDARS) is the division within the Indiana Family and Social Services Administration (IFSSA) which administers RBA (DDARS and IFSSA collectively "the Agency").

On August 24, 1994, Chicagoland Christian Village (CCV) submitted to the Agency a budget report and request for establishment of an RBA reimbursement rate. On September 12, 1994, the Agency acknowledged receipt of the material with a letter stating,

At this time, we are not processing any requests for participation in the RBA/ARCH Programs. Should Chicagoland Christian Village desire to participate in the RBA Program they may make a request in writing which will be kept on file for future reference if the program is opened up to additional providers.

(R. 21). CCV filed a petition for administrative review on September 24, 1994; however, CCV wrote the appointed administrative law judge on December 2, 1994, that CCV had "determined that any administrative remedy [it] may have is legally inadequate." (R. 46).

On November 30, 1994, CCV filed a complaint seeking declaratory judgment and alleged the Agency had "no statutory or regulatory authority ... to refuse arbitrarily to admit providers to the RBA Program" and had imposed an illegal moratorium. (R. 8). CCV's lawsuit included as a co-plaintiff Jean Holley, an elderly resident of CCV alleged by the lawsuit to be eligible for RBA and who proceeded to apply for RBA benefits about a month after the lawsuit was filed. The Agency filed a motion to dismiss. CCV moved for summary judgment, claiming the Agency "acted in an illegal manner by arbitrarily placing a moratorium on admitting new providers to the RBA Program" without any authority to do so. (R. 52). The Agency also moved for summary judgment. The Agency submitted no evidence that a rule had been promulgated concerning new applicants for provider status, and its own designated material acknowledged that no RBA providers had been admitted to the RBA program since April 1992. However, the Agency claimed a "reasonable interpretation" of the RBA statute would allow DDARS "the authority to impose a moratorium on the admission of new providers," and "[a]n agency policy arising out of a reasonable statutory interpretation does not have to be promulgated as a rule." (R. 102, 102–3).

The trial court granted the Agency's motion to dismiss as to Holley, "because she lack[ed] standing to pursue the claims raised in her complaint." (R. 253). The court denied summary judgment to CCV and granted the Agency's motion for summary judgment

## DECISION

When reviewing the grant of a motion for summary judgment, the appellate court applies the

same standard applicable to the trial court: only if the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted.

*Shuamber v. Henderson,* 579 N.E.2d 452, 454 (Ind.1991). When the "evidence is undisputed and there are no unresolved facts to be

determined, it is proper for the appellate court to determine as a matter of law that summary judgment was rendered for the wrong party." *Department of Ins. v. Zenith Re–Insurance Co.,* 596 N.E.2d 228, 229 (Ind. 1992).

CCV claims the trial court granted summary judgment "for the wrong party" because the DDARS moratorium on new applicants for RBA provider status "was a rule, and, therefore, must have been promulgated" according to statutory rulemaking procedures, and DDARS' failure to do so made the DDARS policy of not processing applications illegal.[1] CCV's Brief at 7.

Part of the Agency's argument asserts that "CVA lacks standing to challenge the reimbursement practices of the Agency under RBA as CCV is not an intended beneficiary of RBA." Agency's Brief at 12. Therefore, we begin our consideration with the threshold issue of standing.

Our supreme court defines the issue of standing as follows:

> The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power. It is designed to assure that litigation will be actively and vigorously contested. The standing requirement is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury.

*Schloss v. City of Indianapolis,* 553 N.E.2d 1204, 1206 (Ind.1990) (citations omitted). The "interest which a party must possess to confer standing" is described as follows:

> [I]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue.

*Id.* (citing *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985)).

The Agency refers us to *Department of Public Welfare v. Bair,* 463 N.E.2d 1388, 1391 (Ind.App.1984), where pharmacists who

sought declaratory relief to force the adoption of standards governing reimbursements for services to Medicaid patients were found to lack standing because

> the purpose of the Medical Assistance program is to ensure qualified recipients receive needed medical care and prescription drugs. Any resulting benefit to the plaintiffs is merely incidental and bears no relation to the purpose of the program. It is clear the legislation here in question is not intended to serve as a welfare program for pharmacists.

CCV responds that its "action falls under the exception to *Bair* enunciated in *Vandiver v. Marion County,* 555 N.E.2d 839 (Ind.App. 1990)." CCV's Reply at 7. We held that Dr. Vandiver had standing to claim compensation for medical services he rendered to certain indigent persons under Indiana's Hospital Care for the Indigent Act because he was not, like *Bair,* seeking to force the agency "to adopt necessary standards and make proper reimbursements." *Id.* at 842. Rather, Dr. Vandiver sought "a determination that he [was] a person entitled to reimbursement under the Act" and, therefore, had "a demonstrable interest in the resolution of that question." *Id.*

We agree that CCV stands in a position analogous to that of Dr. Vandiver. While Ms. Holley's untimely filing of her application for RBA benefits defeats her claim of standing in the instant case, the application's inclusion in the designated evidence before the trial court does affirm that Ms. Holley's chosen residential facility was CCV. According to the RBA statute, financial assistance is provided for care in a facility "of the applicant's choosing that is licensed under IC 16–28." I.C. 12–10–6–2(d). CCV is licensed under I.C. 16–28. Its demonstrable interest in the resolution of the question posed to the trial court endows it with standing in the case at bar.

In its summary judgment argument to the trial court, CCV contended that the policy of DDARS to not process potential RBA provider applications amounted to a moratorium

---

**1.** Because this issue is dispositive, we do not reach the other issues argued by CCV.

which was in effect a rule and should be declared illegal for not having been promulgated pursuant to the rulemaking process. CCV cited the statutory definition of a rule "for administrative agencies" as follows:

the whole or any part of an agency statement of general applicability that:

(1) has or is designed to have the effect of law; and

(2) implements, interprets, or prescribes:

(A) law or policy; or

(B) the organization, procedure, or practice requirements of an agency.

(R. 56, citing Ind.Code 4–22–2–3(b)). CCV further supported its characterization of the Agency moratorium as a rule by reference to *Blinzinger v. Americana Healthcare Corp.*, 466 N.E.2d 1371, 1375 (Ind.Ct.App.1984), wherein we stated that administrative rulemaking "looks to the future" and "embraces an element of generality, operating upon a class of individuals or situations."

■ CCV complied with existing administrative regulations in its application submission in order to obtain a rate setting and enter into a provider agreement. *See* 460 I.A.C. 1–3–5, 5–1–15. In response, DDARS stated that it was not processing new applications. This action had the "effect of law," I.C. 4–21.5–1–14(1), because for the foreseeable future all potential providers of RBA services—those in that same "situation[ ]"— will be met with the same response. *See Blinzinger, supra.* Further, the moratorium was expressly described by DDARS to the trial court as "an administrative policy to limit the number of RBA program providers." (R. 103). That DDARS viewed the moratorium as "implement[ing] . . . policy," I.C. 4–21.5–1–14(2), further supports characterizing the moratorium as a rule.

The Agency's moratorium had the effect of law and implemented the Agency's policy with respect to all potential new RBA providers who sought to participate in the RBA program in the future. As such, the moratorium constituted a rule and must have been

"duly promulgated" in order to be "valid and enforceable." *Mugg v. Stanton,* 454 N.E.2d 867, 870 (1983) (citing I.C. 4–22–2–2). No rulemaking procedures were undertaken. Therefore, the moratorium, "not having been promulgated, is void and unenforceable." *Id.*

We reverse and remand to the trial court for entry of an order directing the Agency to process CCV's application for RBA provider status.[2]

RILEY and GARRARD, JJ., concur.

---

2. We note that CCV's complaint included a request for attorney fees, costs and interest. These matters are not argued in CCV's appellate brief. The Agency asserts authority indicating neither attorney fees, interest, nor costs may be awarded against the state. Agency's Brief at 19. CCV's reply brief does not contest this position. Consequently, summary judgment for the Agency with respect to attorney fees, costs and interest is affirmed. *See,* Ind.Appellate Rule 8.3(A)(7).