**Gloria J. JONES, Appellant–Plaintiff,**

v.

**Cheryl SULLIVAN, Secretary of the Indiana Family and Social Services Administration, Appellee–Defendant.**

No. 71A03–9801–CV–11.

Court of Appeals of Indiana.

Dec. 31, 1998.

Kent Hull, Legal Services Program of Northern Indiana, Inc., South Bend, for Appellant–Plaintiff.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Gloria J. Jones ("Grandmother") appeals the entry of sum-mary judgment in favor of Appellee–Defendant Cheryl Sullivan, Secretary of the Indiana Family and Social Services Administration ("FSSA"),[1] in Grandmother's lawsuit claiming that the FSSA did not pay her the appropriate amount for the childcare services Grandmother provided for her grandchildren so that her daughter, the grandchildren's mother ("Mother"), could obtain employment, training, or education to enable her to obtain independence from the Aid to Families with Dependent Children ("AFDC") program administered by FSSA under 42 U.S.C. § 602.[2] Grandmother also attacks the methodology, procedures, and standards utilized by FSSA to determine the appropriate amount due Grandmother. We reverse and remand for a determination regarding whether Grandmother was paid the appropriate amount for the childcare services provided pursuant to the methodologies, procedures, and standards utilized by FSSA in setting the rates for such services. However, we affirm the summary judgment entered with respect to Grandmother's challenge to the methodologies, procedures, and standards adopted by FSSA in setting those rates.

### Issues

Grandmother raises three issues, which we restate and consolidate as follows:

I. Whether Grandmother has legal standing to obtain review regarding whether she was paid the appropriate amounts for her provision of childcare services under the methodologies, procedures, and standards adopted by FSSA for the childcare programs administered under AFDC.[3]

II. Whether Grandmother has legal standing to challenge FSSA's "methods,

---

1. FSSA has informed this Court that Katherine L. Davis succeeded Cheryl Sullivan as Secretary of FSSA during the pendency of this action. (Appellant's brief at 1). FSSA stated in its brief that it has filed a motion to substitute Davis for Sullivan. (Appellant's brief at 1). We have carefully reviewed the materials transmitted from the Clerk and have not found such a motion. In any event, however, the precise identity of FSSA's Secretary is not material to the disposition of this appeal. Therefore, we will retain the original caption for this action.

2. The federal childcare programs involved here have been replaced by the Child Care and Development Block Grant Amendments of 1996, 42 U.S.C. § 9858. Public Law 104–193 §§ 601–15 (effective October 1, 1996).

3. Grandmother "suggests" that, even if the trial court correctly determined that she lacked standing, the trial court should have allowed Grandmother the opportunity to amend her complaint in order to substitute Mother and the children to prosecute the action as the real parties in interest. (Appellant's brief at 15). Grandmother contends that such substitution would relate back to

procedures, and standards (or absence thereof) utilized by [FSSA] in paying or refusing to pay child care providers for their services" under the childcare programs administered under AFDC.[4]

## Facts

The evidence most favorable to the non-movant Grandmother reveals that Mother had been the recipient of AFDC benefits on behalf of her three children. (R. 7). AFDC, also known as Title IV–A of the Social Security Act, is a federal-state cooperative effort administered by the states. *Wehunt v. Ledbetter*, 875 F.2d 1558, 1569 (11th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609. AFDC provides monetary payments from the state to financially needy families which include children deprived of parental support due to death, disability, or desertion. *Id.;* 42 U.S.C. § 602. Childcare services have been guaranteed as one component of AFDC benefits under circumstances where childcare will enable a parent to work or participate in training or education. 42 U.S.C. § 602(g)(1)(A)(I). Grandmother provided childcare for Mother's children and then submitted bills to her county Office of Family and Children ("OFC") which administers AFDC on the local level. (R. 8).

Grandmother began caring for the children and billing the OFC in April of 1994. (R. 8). From April through September of 1994, Grandmother billed the OFC a total of $2,580.00 which has not been paid. (R. 8, 9). From October of 1994 through January of 1995, Grandmother billed the OFC a total of $2,960.00 of which the OFC paid $1,980.00, leaving a shortfall of $980.00 for that period. (R. 9). Grandmother submitted and received full payment on bills of $895.00 for February 1995, and $716.00 for each of March, April, and May of 1995. (R. 9, 10). Thus, the total amount which Grandmother claims the FSSA failed to pay her was $3,560.00 ($2,580.00 + $980.00).

Grandmother was unable to get satisfactory answers from OFC or FSSA regarding why all her bills had not been paid in full. (R. 9). FSSA has asserted that the children were not eligible for benefits during four of the months for which Grandmother submitted bills. (R. 191). Grandmother received a letter from FSSA which purported to explain the reimbursement formula as follows:

> The weekly maximums we can pay to you are established by the local Step Ahead Councils and are based on local market rates. If your charge is greater than our maximums, you will need to work out payment for the excess charge with the person for whom you are providing services.

(R. 23). Grandmother received a form which stated that $65.00 per week was available for each of two of the children and an additional $50.00 per week was available for the third for a total of $180.00 per week. (R. 25). One caseworker told Grandmother that she was receiving "top dollar" for her services. (R. 13).

Grandmother filed the instant lawsuit requesting that it be certified as a class action and asserting that the FSSA had violated her rights under 42 U.S.C. § 602(a)(4), 45 C.F.R. § 205.10, 470 I.A.C. 1–4–1(b); IND.CODE § 4–22–2–1; the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution; Article I, § 23 and Article I, § 12 of the Indiana Constitution. (R. 14–16). Grandmother also made a claim in "equity" which reads as follows:

> [Grandmother] and members of the proposed class are without an appropriate remedy of law and are threatened with

---

the date of the filing of her petition based on IND. TRIAL RULE 15 (and 17).

After the pleadings have been closed, the grant or denial of a motion to amend the pleadings is a matter within the trial court's discretion. *Brenneman Mechanical & Electrical, Inc. v. First National Bank of Logansport*, 495 N.E.2d 233, 244 (Ind.Ct.App.1986), *trans. denied.* Undue delay in the presentation of a request for an amendment of the pleadings is one factor to be considered in the exercise of that discretion. *Id.*

Upon remand, Grandmother is free to move the court for the substitution of parties. However, the decision regarding whether that motion should be granted remains a matter within the trial court's discretion.

**4.** The quotation is from Grandmother's *Verified Complaint For Class Action Injunctive and Declaratory Relief.* (R. 7).

irreparable harm in that, because of their limited financial means, they are deprived of compensation necessary for them to continue providing the necessary services to children in the [AFDC childcare] programs and without such compensation may be compelled to incur additional expenses to insure the safety of the children or to discontinue their services to these children.

(R. 13). Grandmother claimed that she had been injured because FSSA denied the compensation she had requested "without adequate notice of the reasons for that action." (R. 13). Grandmother requested the court to 1) certify the matter as a class action; 2) enter an order enjoining FSSA from violating the class members' rights; 3) enter a declaratory judgment that FSSA has violated the class members' rights; 4) order FSSA to issue notice to all class members explaining the injunctive declaratory relief ordered and requiring FSSA to propose a plan for effective and appropriate compensatory relief for members of the class; 5) order FSSA to compensate class members for their services;[5] and 6) award attorney fees. (R. 16–17).

█ The trial court denied the request to certify the matter as a class action as follows:

The Motion is denied as premature at this time. However, it may be raised at a later date at the request of the plaintiff.

(R. 140). Ultimately, the trial court granted FSSA's motion for summary judgment finding that Grandmother lacked standing.[6] This appeal ensued.

## Discussion and Decision

### Standard of Review

█ As stated in *Stevenson v. Hamilton Mutual Insurance Company*, 672 N.E.2d 467 (Ind.Ct.App.1996), *trans. denied:*

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred.

672 N.E.2d at 470–71 (citations omitted). The reviewing court may affirm the grant of summary judgment on any legal basis supported by the designated materials. *Wolfe v. Stork RMS–Protecon, Inc.*, 683 N.E.2d 264, 267 (Ind.Ct.App.1997).

### A. The Doctrine of Standing

█ The standing doctrine constitutes a significant restraint upon the ability of Indiana courts to act as it denies courts any jurisdiction absent actual injury to a party participating in the case. *Pence v. State*, 652 N.E.2d 486, 488 (Ind.1995); *Indiana Civil Rights Comm'n ex rel. Belzer v. Indianapolis Newspapers, Inc.*, 702 N.E.2d 370, 378–79 (Ind.Ct.App.1998). The *Pence* court explained the doctrine of standing as follows:

---

5. After the lawsuit was filed, FSSA paid Grandmother an additional $1,020.00 admitting that she had been underpaid by that amount. (R. 191). FSSA asserts that Grandmother has now been paid in full and, therefore, her claim for monetary damages is moot. (R. 184–85). However, the $1,020.00 payment obviously did not satisfy Grandmother's claim that she was underpaid the amount of $3,560.00.

6. Grandmother failed to include the trial court's judgment in the record of proceedings submitted on appeal. Nevertheless, FSSA concedes that the verbatim statement of the judgment as included in Grandmother's brief is accurate. (Appellee's brief at 2). Although trial court findings entered in summary judgment proceedings aid appellate review, they are not binding upon this court. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993).

For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

*Id.* (emphasis omitted; quoting *City of Indianapolis v. Indiana State Bd. of Tax Comm'rs*, 261 Ind. 635, 308 N.E.2d 868, 870 (1974)); *See also ICRC ex rel. Belzer*, 702 N.E.2d at 379. In order to establish standing, a plaintiff must show that he or she has sustained, or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue. *Id.; Indiana State Police v. Don's Guns & Galleries*, 674 N.E.2d 565, 570 (Ind.Ct.App.1996), *trans. denied.* In *Regan v. Uebelhor*, 690 N.E.2d 1222 (Ind.Ct. App.1998), *trans. denied*, we held that a testator's granddaughter, as a contingent remainderman of a testamentary trust, lacked standing to bring an action against the trustee because granddaughter's interest was indirect, contingent, and derivative of the beneficiaries' interest in the trust. *Id.* at 1225–26.

◼ The limits placed on justiciability under Article III of the United States Constitution as applied by the federal courts have no direct applicability to a standing analysis under Indiana law. *Pence*, 652 N.E.2d at 488. However, the Indiana Constitution places similar limits upon the jurisdiction of our courts. *Id.* (as discussed above). As the federal courts have had considerable experience in analyzing standing issues under federal statutes, including AFDC, we will draw upon federal decisions for instruction.

In *Coker v. Bowen*, 715 F.Supp. 383, 384 (D.D.C.1989), *affirmed*, 902 F.2d 84, homeless families and the National Coalition for the Homeless ("NCH"), an advocacy and service organization for homeless persons, brought suit to compel the Department of Health and Human Services ("HHS") to monitor and require States to adhere to their commitments to provide Emergency Shelter Assistance (EA) as administered under AFDC. The *Coker* court addressed several concepts bearing upon standing such as the 'causation' or 'traceability' requirement which looks at the nexus between the defendant's action and the harm and the 'redressability' requirement which looks at the nexus between the harm and the relief available. *Id.* at 387. The presence of an independent variable between either the harm and the relief sought or the harm and conduct complained-of makes causation sufficiently tenuous that standing should be denied. *See Mideast Systems and China Civil Const. v. Hodel*, 792 F.2d 1172, 1178 (D.C.Cir.1986). The *Coker* court determined that the homeless persons and their advocates lacked standing to bring an action for injunctive relief against the HHS because the agency's control over the states' provision of EA to eligible applicants was indirect and speculative considering that the states were vested with broad discretion and flexibility in determining how to administer the program. 715 F.Supp. at 390. The *Coker* court noted that the traceability and redressability factors were remote and speculative because the alleged failure by the states to take discretionary action was a particularly weak link in the causal chain. *Id.* at 389–90. *See also, Allen v. Wright*, 468 U.S. 737, 739, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (parents of black children attending public schools in districts undergoing desegregation lacked standing to challenge the government's allegedly unconstitutional grant of tax exemptions to racially discriminatory schools because one could only speculate whether the denial of tax exemptions to those schools would affect the ability of plaintiffs' children to receive a desegregated education as such was dependent upon the reactions of the schools and the parents to the withdrawal of the tax exemptions); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (mother of an illegitimate child lacked standing to challenge the failure of the district attorney to prosecute fathers of illegitimate children for their failure to pay child support because it was speculative whether incarceration of the father would result in future payments of child support); *Mideast Systems*, 792 F.2d at 1178 (unsuccessful bidder

lacked standing to challenge Department of Interior's failure to require contractor to comply with a conflict of interest regulation since the ultimate relief desired depended upon the contractor's independent decision to award the contract).

### B. *Bair and Vandiver*

Considered together, the cases of *Department of Public Welfare v. Bair*, 463 N.E.2d 1388, 1389 (Ind.Ct.App.1984), *trans. denied*, and *Vandiver v. Marion County*, 555 N.E.2d 839 (Ind.Ct.App.1990), provide an analytical framework in which to assess whether a particular person has legal standing to assert his claim that he has been wrongfully denied public benefits. In *Bair*, pharmacists sought declaratory relief to force the adoption of standards governing reimbursements for their services as "providers" to Medicaid patients. We held the pharmacists lacked standing because:

> the purpose of the Medical Assistance program is to ensure qualified recipients receive needed medical care and prescription drugs. Any resulting benefit to the [pharmacists] is merely incidental and bears no relation to the purpose of the program. It is clear the legislation here in question is not intended to serve as a welfare program for pharmacists.

*Id.* at 1389, 1391.

We distinguished *Bair* in *Vandiver*, 555 N.E.2d 839. *See Chicagoland Christian Village, Inc. v. Sullivan, FSSA*, 671 N.E.2d 174, 176 (Ind.Ct.App.1996). In *Vandiver*, we held that a doctor had standing to claim compensation for medical services rendered to certain indigent persons under Indiana's Hospital Care for the Indigent Act because he was not, as were the pharmacists in *Bair*, seeking to force the agency "to adopt necessary standards and make proper reimbursements." *Id.* at 842. Rather, the doctor in *Vandiver* sought "a determination that he [was] a person entitled to reimbursement under the Act" and therefore, had "a demonstrable interest in the resolution of that question." *Id.*

### C. *Section 602 Childcare Benefits*

The statutory section authorizing appropriations for the 42 U.S.C. § 602 childcare programs at issue in the present case read as follows:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

42 U.S.C. § 601.

### D.

### I. *Grandmother's Standing to Challenge Amounts Reimbursed*

■ Grandmother, as a "caretaker relative," was intended to have been benefitted under the Act in the fulfillment of its purpose to maintain or strengthen the family lives of dependent children. *See id.* Therefore, we hold that Grandmother, similarly to the doctor in *Vandiver*, 555 N.E.2d 839, has a demonstrable interest in a correct determination of the amount she was to have been reimbursed by FSSA for the provision of her childcare services. Accordingly, we hold that Grandmother has standing to seek judicial review regarding whether FSSA paid her the amounts that she was due under the applicable methodologies, procedures, and standards adopted by FSSA.

### E.

### II. *Grandmother's Standing to Challenge FSSA's Methodologies, Procedures, and Standards*

■ On the other hand, the benefits Grandmother received were indirect and subordinate to the overriding purpose of the Act which was to benefit families *on the behalf of*

*dependent children.* Although the Act permitted States to authorize parents to select relatives as the "providers" of childcare, the Act also permitted States to 1) provide the care directly, 2) arrange the care through the use of service contracts or vouchers, or 3) recruit other agencies and volunteer groups for nonreimbursed care. 42 U.S.C. § 602(g)(vii)(B); 45 C.F.R. § 255.3(a). Thus, Grandmother's interest in the childcare payments was dependent upon FSSA's administration of the program. Moreover, and more importantly, any interest Grandmother had in being paid for providing childcare was contingent upon the exercise of Mother's discretion in choosing Grandmother as her childcare provider.

Based upon the indirect and contingent nature of Grandmother's interest in the childcare benefits, we must conclude that Grandmother lacked standing to bring an action to force FSSA "to adopt necessary standards and make proper reimbursements" because her primary role was as the provider of services and any resulting benefit she received from being compensated was largely incidental to the purposes of AFDC. *See Bair,* 463 N.E.2d at 1389, 1391.

### Conclusion

We reverse and remand for a determination regarding whether Grandmother was paid the appropriate amounts for the provision of childcare services pursuant to the methodologies, procedures, and standards utilized by FSSA in setting the rates for such services. However, we affirm the summary judgment entered with respect to Grandmother's challenge to the methodologies, procedures, and standards adopted by FSSA in determining those rates.

Reversed in part and Affirmed in part.

BAKER and DARDEN, JJ., concur.